IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Marlboro Electric Cooperative, Inc., | ) | C/A No. 4:20-cv-4386-SAL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **OPINION & ORDER** |
| Central Electric Power Cooperative, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on a motion for reconsideration filed by Plaintiff Marlboro Electric Cooperative, Inc. on April 15, 2022. [ECF No. 102.] The motion asks the court to reconsider its March 28, 2022 order granting summary judgment in favor of Defendant Central Electric Power Cooperative, Inc. on Marlboro's two declaratory judgment claims and its breach of contract claim. [ECF No. 95.] Central filed a response in opposition on April 21, 2022. [ECF No. 104.] Following a temporary stay on the proceedings, Marlboro filed a reply supporting its Motion on September 6, 2022, ECF No. 120, and then on October 10, 2022, filed a notice of supplemental authority purporting to modify its reply, ECF No. 122. Central then moved, with Marlboro's consent, for leave to file a sur reply for the purpose of responding to Marlboro's notice of supplemental authority. [ECF No. 123.] Central also filed its sur reply as an exhibit to that motion.[1] *See* [ECF Nos. 123-1, 123-2.] Thus, the matter is ripe for resolution by the court.

**LEGAL STANDARD**

Motions to reconsider are governed by Rule 59(e) of the Federal Rules of Civil Procedure. The rule provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days

---

[1] The court grants Central's motion for leave to file a sur reply, ECF No. 123, and accordingly considers its already-filed brief.

1

after the entry of the judgment." Fed. R. Civ. P. 59(e). Further, the Fourth Circuit Court of Appeals has interpreted Rule 59(e) of the Federal Rules of Civil Procedure to allow the court to alter or amend an earlier judgment only: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (quoting *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)). "Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of judgment, nor may they be used to argue a case under a novel theory that the party had the ability to address in the first instance." *Pacific Ins.*, 148 F.3d at 403. Relief under Rule 59(e) is "an extraordinary remedy which should be used sparingly." *Id.* (internal marks omitted). "Mere disagreement does not support a Rule 59(e) motion." *Becker*, 305 F.3d at 290 (quoting *Hutchinson v. Stanton*, 994 F.2d 1076, 1082 (4th Cir. 1993)).

## DISCUSSION

Marlboro contends the court erred by granting summary judgment on all three of its claims and denying its request for additional discovery and asks the court to reconsider its judgment. After review of its prior order, the parties' briefing, and relevant case law, the court finds Marlboro fails to identify any basis justifying an alteration of its order granting summary judgment in favor of Central. The court briefly addresses each of Marlboro's arguments, in turn.

**I. The court properly granted Central summary judgment on all three of Marlboro's claims.**

With respect to the court's grant of summary judgment, Marlboro alleges the court committed three legal errors: (1) The court erred by not construing Central's Bylaws and the Wholesale Power Contract ("WPC") as one contract; (2) The court erred by not reviewing its proffered extrinsic evidence when determining whether the pertinent documents contained any ambiguities; and (3)

The court improperly shifted the summary judgment burden when resolving Central's motion as to the breach of contract claim. The court determines each argument lacks merit.

### A. The court considered the Bylaws and WPC as one contract.

First, Marlboro argues the court committed error by "erroneously constru[ing] the WPC and Central's Bylaws separately, rather than as a single contract." [ECF No. 102-1, p. 5.] However, this assertion is clearly at odds with the court's order. The court did, in fact, discuss the two documents as separate agreements at various points in the order but also expressly considered the two documents as one and still determined their union did not create any ambiguity. *See* [ECF No. 95, p. 15 ("Even if the court reads the WPC and the Bylaws *as one contract*, nothing in the Bylaws' termination of membership provision or Section 15 of the WPC states that 'an equitable termination payment,' is a way to meet 'all contractual obligations to the Corporation.'") (internal citations omitted) (emphasis added).] Thus, the court did exactly what Marlboro now requests and cannot have committed legal error by doing so.

### B. The court cannot consider Marlboro's extrinsic evidence.

Marlboro next argues as a basis for reconsideration that the court applied the wrong ambiguity standard when interpreting the WPC and Bylaws. Marlboro's argument is as follows: South Carolina law requires courts to consider extrinsic evidence of industry custom and practice when determining whether ambiguity exists. Because Marlboro offered extrinsic evidence of industry custom and practice which purportedly rendered the WPC and Bylaws ambiguous, the two documents are ambiguous, and summary judgment is inappropriate. *See* [ECF No. 102-1, pp. 7–18.] There are two problems with Marlboro's argument—first, Marlboro initially urged the court to adopt the same standard it used in its Order; second, South Carolina law limits consideration of extrinsic evidence to interpret *ambiguous* documents.

**1. Marlboro initially argued a different standard prior to the court's order.**

Although Marlboro now claims the court should have used a different standard, it initially argued for the same standard used by the court when responding to Central's summary judgment motion. In its Motion, Marlboro asserts that the court should have used the following standard to determine ambiguity: "A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement, and who is cognizant of the customs, practices, usages and terminology understood in the particular trade or business." *Williams v. GEICO*, 762 S.E.2d 705, 710 (S.C. 2014) (citations omitted). Instead, the court described its standard differently by providing "[a] contract is ambiguous when the terms of the contract are reasonably susceptible of more than one interpretation." [ECF No. 95, p. 8 (quoting *S.C. Dep't of Nat. Res. V. Town of McClellanville*, 550 S.E.2d 299, 302 (S.C. 2001)).]

While Marlboro argues the use of this standard constitutes legal error, it is *the same* standard proposed by Marlboro in its opposition to summary judgment. *Compare* [ECF No. 74, p. 10] *with* [ECF No. 95, p. 8.] Indeed, Marlboro cited *Pee Dee Stores, Inc. v. Doyle*, 672 S.E.2d 799, 803 (S.C. Ct. App. 2009) in arguing for the standard used by the court, and *Doyle* cites *S.C. Dep't of Nat. Res.*, 550 S.E.2d 299, 302, *the same* case Marlboro now contends is problematic. And while Marlboro argued for the standard proposed in *Williams* at the summary judgment hearing, mere after-the-fact disagreement with the standard Marlboro initially proffered cannot serve as grounds to amend a judgment. *See Becker*, 305 F.3d at 290 (quoting *Hutchinson v. Stanton*, 994 F.2d 1076, 1082 (4th Cir. 1993)). Moreover, the standard articulated by the court is supported by South Carolina state law and the court did not commit legal error by adopting it.

**2. South Carolina law limits when courts may review extrinsic evidence.**

Even if the court applied the standard now argued by Marlboro as appropriate under *Williams*, it still cannot consider the extrinsic evidence proffered by Marlboro because the documents are unambiguous. In fact, the South Carolina Supreme Court's opinion in *Williams* supports this conclusion: "Where the contract's language is clear and unambiguous, *the language alone* determines the contract's force and effect." *Williams*, 762 S.E.2d at 709 (emphasis added); *see also Butler v. Travelers Home and Marine Ins. Co.*, 858 S.E.2d 407, 410 (S.C. 2021) (providing the same); *Harleysville Group Ins. v. Heritage Communities, Inc.*, 803 S.E.2d 288, 304 (S.C. 2017) (2017) (same); *McGill v. Moore*, 672 S.E.2d 571 (2009) (same). Here, the language in the two documents was unambiguous when the court first considered them, and they remain unambiguous today. The WPC and Bylaws (either taken together or considered separately) are unambiguous and provide for termination of Marlboro's obligation to purchase power from Central in only three limited circumstances: (1) the expiration of the contract term on December 31, 2058, (2) mutual agreement of the parties, and (3) the undertaking of a "restricted transaction" as outlined by Section 20 of the WPC. This language is clear, and the court may not consider extrinsic evidence just for the sake of rendering it opaque. *Cf. S.C. Dep't of Nat. Res. v. Town of McClellanville*, 550 S.E.2d 299, 303 (S.C. 2001) (holding that courts may admit extrinsic evidence only after they decide a contract is ambiguous).

Marlboro argues, however, the WPC is a contract for the sale of goods governed by the Uniform Commercial Code, which allows for the consideration of extrinsic evidence during interpretation. [ECF No. 102-1, pp. 11–14.] Although Marlboro arguably raises the substance of this argument for the first time in its Motion, the court briefly addresses it. It is true that under the UCC courts may consider extrinsic evidence of industry custom or practice without first finding a contract ambiguous. *See S. Recycling, LLC v. Gibbs Int'l, Inc.*, No. 7:13-CV-3125-BHH, 2016 WL

1258402, at *9 (D.S.C. Mar. 31, 2016) (citing *Columbia Nitrogen Corp. v. Royster Co.*, 451 F.2d 3, 9 (4th Cir. 1971)). However, consideration of this extrinsic evidence "does not simply trump unambiguous contractual terms" and "the test of admissibility is . . . whether the proffered evidence of course of dealing and trade usage reasonably can be construed *as consistent* with the express terms of the agreement." *Id.* (emphasis added). Marlboro intends for the court to consider extrinsic evidence for the exact opposite reason—to find that industry custom is at odds with the contractual language. The court simply cannot consider this evidence and also follow South Carolina law. Therefore, Marlboro fails to identify a legal error justifying an altered judgment.

**C. The court did not shift the summary judgment burden onto Marlboro.**

Next, Marlboro contends the court improperly shifted the burden of proof from Central onto it when granting summary judgment in Central's favor on Marlboro's breach of contract claim.[2] Specifically, Marlboro claims the court required it to prove "that [Central's] Bylaws or the WPC expressly permitted it to satisfy its contractual obligations to [Central] through an equitable termination payment." [ECF No. 102-1, p. 21.] Instead, the proper analysis, according to Marlboro, was for the court to require Central "to prove that its Bylaws and the WPC unambiguously *precluded* [Marlboro] from" satisfying those obligations with an early termination payment. *Id.* Marlboro's argument misses the mark.

When resolving the breach of contract claim, the court noted South Carolina law provides "there is not breach of an implied covenant of good faith where a party to a contract has done what

---

[2] Marlboro also argues the court erred in granting summary judgment on this claim by criticizing Marlboro's conflation of the WPC and Bylaws and then solely focusing its analysis on the provisions of the WPC. [ECF No. 102-1, p. 20.] However, Marlboro contradicts its own argument in the very next sentence by conceding "[the court] construed the documents together, as it was obligated to do." *Id.* Therefore, the only alleged error actually identified by Marlboro involves the alleged improper burden shifting. That is the focus of the court's inquiry in this section.

provisions of the contract expressly gave him the right to do." [ECF No. 95, p. 13 (quoting *Adams v. G.J. Creel & Sons, Inc.*, 465 S.E.2d 84, 85 (S.C. 1995)).] The court also reviewed both the WPC and Bylaws and independently determined none of their provisions require Central to offer Marlboro equitable terms for early termination of the contract. Ultimately, the court provided "*Central* said it did not have to give terms" and "*Central* is correct." *Id.* (emphasis added). This does not suggest the court ruled in favor of Central based on Marlboro's failure to satisfy any burden. Rather, it shows the court believed Central satisfied its burden of showing no genuine issue of material fact existed as to this issue because the unambiguous terms of the documents do not require such action. Central is not required to prove its compliance with an obligation that never existed. Therefore, Marlboro fails to identify how the court committed legal error and its grant of summary judgment will stand.[3]

**II. Marlboro fails to identify specific legal error in the court's denial of its Rule 56(d) request.**

Although Marlboro argues the court erred in denying its request for additional discovery under Fed. R. Civ. P. 56(d), it fails to provide an intervening change in the law or new evidence not previously considered by the court requiring additional discovery. Nor does Marlboro identify a specific legal error in the court's order. Instead, Marlboro repackages its arguments relating to the consideration of extrinsic evidence and generally maintains the court's "refusal to consider

---

[3] Marlboro's citation to the Federal Energy Regulatory Commission's Initial Decision in *Tri-State Generation & Transmission Ass'n Inc.*, 180 FERC ¶ 63,034 (Issued September 29, 2022) similarly fails to identify legal error in the court's order justifying an alteration to its judgment. The decision in *Tri-State* involved a review of the reasonableness of an electric cooperative's contract termination payment methodology pursuant to the standards outlined in the Federal Power Act. [ECF No. 122-1, p. 7.] The question before the court on Central's summary judgment motion was whether Central was entitled to judgment as a matter of South Carolina contract law, *not* whether the provisions of the parties' WPC and Central's Bylaws are reasonable under the Federal Power Act. Accordingly, the court does not find the FERC decision persuasive and it does not justify a different outcome.

anything outside the four corners of [Central's] Bylaws and the WPC also led [the court] to deny [its] Rule 56(d) request" and constitutes legal error. [ECF No. 102-1, p. 18.] As the court notes above, South Carolina law prevents it from considering Marlboro's proffered extrinsic evidence because the WPC and Bylaws are unambiguous. Because Marlboro fails to identify another legal error, there is no "clear error" for the court to correct. Moreover, denying Marlboro's request for additional discovery does not result in manifest injustice because the court could not consider any additional evidence uncovered through discovery because the WPC and Bylaws are unambiguous. Therefore, the court will not amend its denial of Marlboro's request for additional discovery.

## CONCLUSION

In accordance with the foregoing reasons, Central's Motion for Leave to File a Sur Reply, ECF No. 123, is **GRANTED** and Marlboro's Motion for Reconsideration, ECF No. 102, is **DENIED.**

**IT IS SO ORDERED.**

/s/ Sherri A. Lydon
United States District Judge

December 7, 2022
Columbia, South Carolina